UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:22-cr-00064-APG-EJY |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | Re: ECF No. 49 |
| CALEB MITCHELL ROGERS, | Motion to Suppress |
| Defendant. | |

Pending before the Court is Defendant's Motion to Suppress Purported Eyewitness Identification (the "Motion"). ECF No. 49. The Court carefully considered the Motion, the government's Response (ECF No. 53), Defendant's Reply (ECF No. 56), related filing, and whether an evidentiary hearing is necessary. The Court finds no evidentiary hearing is necessary and recommends the Motion be denied.

**I.    Background and Summary of Arguments**.

This case arises from a grand jury indictment of Defendant on three counts of interference with commerce by robbery and one count of brandishing a firearm during and in relation to a crime of violence. The robberies at issue occurred on November 12, 2021, January 6, 2022, and February 7, 2022, at Red Rock, Aliante, and the Rio resort-casinos, respectively. Defendant is alleged to have used a gun during the robbery at the Rio.

Defendant seeks to suppress out of court identifications "and all derivative testimony" by two witnesses who identified Defendant as the perpetrator in two of the three robberies with which he is charged.[1] ECF No. 49 at 4. There is no dispute that neither witness was present when the robberies occurred; rather, Defendant contends the witnesses identified him from surveillance photos

---

[1] The witnesses include Defendant's brother, Josiah Rogers ("Josiah"), and Defendant's coworker, Justin Jonsson ("Jonsson"). Jonsson is a current Las Vegas Metropolitan Police Department ("Metro") officer. There is no dispute that Jonsson and Defendant, who was also a Metro officer at the time of his arrest for the robberies, attended the police academy together and partnered and patrolled together while both were active with Metro.

1

"under suggestive and coercive circumstances … render[ing] … [the] identifications unreliable, if not inaccurate, willfully or otherwise." *Id*.

Defendant says when Jonsson was interviewed by Metro and the F.B.I. (the "Agents") he was shown "poor quality video surveillance still photographs … [of a] masked person pictured at the Aliante at the time of the robbery." *Id*. at 7. Defendant contends Jonsson identified Defendant only after his discussion with Metro's Internal Affairs and during "coercive and suggestive statements" made by the Agents during his interview. *Id*. at 8. In support of his argument, Defendant points to use of the word "demons" by the Agents and argues Jonsson was "not too subtly" pressured "to conclude … Defendant … deserved no respect, nor apparently the presumption of innocence." *Id*. Defendant concludes the Agents turned Jonsson "away from an objective assessment of … Defendant" by characterizing Defendant's actions as selfish, "a slap in the face," negatively impacting Jonsson's Metro squad, and through an implied warning not to withhold information. *Id*.

Defendant further argues that during the second interview of Josiah, Defendant's brother, identified Defendant in a surveillance photo from the Red Rock robbery only by saying "that's … [Defendant's] nose." *Id*. at 9. Defendant says the photo was one in which the subject was wearing a mask. *Id*. Defendant complains that because the Agents "express[ed] skepticism about" Josiah's honesty and whether he was providing complete answers during the interview, it is clear Josiah "was a suspect in at least the Red Rock robbery," which created a motive for Josiah to falsely identify his brother. *Id*.

The government responds that Defendant's effort to exclude the identifications by Josiah and Jonsson is meritless. The government argues that Jonsson not only identified Defendant in surveillance video, but also the jacket the perpetrator was wearing as a jacket worn by Defendant. ECF No. 53 at 4. Jonsson identified the truck used in the Red Rock robbery as one belonging to Josiah, and the car used in the Aliante robbery as one owned by Defendant. *Id*. With respect to Josiah, the government says he admitted the truck identified by Jonsson was his truck and confirmed he sold the truck to a recycler about four and one-half hours after the Red Rock robbery. *Id*. The government points to Josiah's identification of Defendant in security video of the Red Rock robbery.

*Id*. Josiah also identified the white car used in the Aliante robbery as looking like Defendant's car. *Id*. at 4-5.

In Reply, Defendant argues the government "underplay[s] the significance of the *context* of the challenged identifications." ECF No. 56 at 2 (emphasis in original). Defendant says only an evidentiary hearing will flesh out the complete record demonstrating the extremely unfair processes leading to the identifications he seeks to suppress. Rather than waiting for trial to demonstrate the "irreparable misidentification" of Defendant, Defendant asks the Court to make the determination at an evidentiary hearing. *Id*. at 2-3. Defendant again argues Jonsson was under "pressure" when he identified Defendant saying the transcript of the interview supports this conclusion. *Id*. at 3.

**II.   Discussion**.

   A.   The Law.

The law applicable to suppression of pretrial and in-court identification testimony is well settled. "Convictions based on eyewitness identification testimony should be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Sialofi*, Case No. 3:13-cr-00092, 2014 WL 12689870, at *1 (D. Alaska Oct. 31, 2014) *citing Simmons v. United States*, 390 U.S. 377, 385 (1968) (internal quote marks omitted). Further, any "danger that use of … [identification by photograph] may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes the jury to the method's potential for error." *Simmons*, 390 U.S. at 384. In *Perry v. New Hampshire*, 565 U.S. 229, 236 (2012), the Supreme Court explained "[t]he Constitution … protects a defendant against a conviction based on evidence of questionably reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit."

In determining whether to suppress an identification, the Court must "evaluate the totality of the circumstances"; although, "[a]n identification procedure that is impermissibly suggestive does not require automatic exclusion of the identification testimony." *Sialofi*, 2014 WL 12689870 at *1 *citing Monson v. Brathwaite*, 432 U.S. 98, 113-14 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199 (1972) (internal quote marks omitted). When an "identification is reliable despite an unnecessarily

3

suggestive identification procedure" automatic exclusion "is a Draconian sanction … that may frustrate rather than promote justice." *Brathwaite*, 432 U.S. at 113. Only when the "indicators of … [the witness's] ability to make an accurate identification are … outweighed by the corrupting effect" of law enforcement suggestion is an identification properly suppressed. *Id*. at 116. In evaluating the reliability of a single photograph identification, courts consider (1) "the witness'[s] opportunity to view the criminal at the time of the crime," (2) "the witness'[s] degree of attention," (3) "the accuracy of the prior description of the criminal," (4) "the level of certainty demonstrated at the confrontation," and (5) "the time between the crime and the confrontation." *Id*. at 114.

Regarding the requested evidentiary hearing, such hearing is "only [required] when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *Sialofi*, 2014 WL 12689870 at *2 *citing United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Deciding on the reliability of evidence is a function of the jury. There is no per se rule that an evidentiary hearing on the admissibility of identification evidence is needed. *Watkins v. Sowders,* 449 U.S. 341, 347-49 (1981).

  B. The Interviews.

    1. *Jonsson's Interview*.

The review of Jonsson's interview transcript evidences a consistent cordial and conversational tone. ECF No. 51-1. Jonsson confirmed he reached out to Internal Affairs after seeing articles regarding Defendant's arrest in which vehicles used in the robberies appeared. *Id*. at 3. Jonsson recognized both vehicles depicted. *Id*. Interview questions covered the pickup truck used in the Rio robbery and Volkswagen used in the Aliante robbery, with Jonsson identifying the truck as belonging to Defendant's brother (*id*. at 13-15), and the Volkswagen used in the Aliante robbery as Defendant's car. *Id*. at 16-17. There was a "weird question" from the Agents about whether Defendant wore hats and an exchange about license plates on the cars, which Jonsson admitted he remembered as Golden Knights plates but only after the Agents asked him if the recollection was from news broadcasts. *Id*. at 18-19.

The Agents showed Jonsson a "still" photograph, which they admitted was not great quality, after asking Jonsson how confident he would be in an identification of Defendant if the photo was

only "from the nose up" and Jonsson responded he'd be "confident." *Id*. at 20. Importantly, Jonsson was shown the photo only after the following exchange:

> Q: And obviously if you don't – if you're not certain, I'd rather you just …
> A: "Yeah."
> Q: … be like, "Okay. I'm not – I don't know."

*Id*. As the Agents apparently looked through photos to show Jonsson, Jonsson unprompted said, " I think I recognize the jacket." *Id*. at 21. This statement was followed by:

> Q: The jacket?
> A: Yeah.
>
> ***
>
> Q: What … do you recognize about the jacket, you think?
> A: It's almost like a fleece type. It's thick on the inside of the area.
> Q: Okay.
> A: Um, I've seen him wear it a few times, like up to the range or whatever.

*Id*. After this exchange, Jonsson was shown a picture of Defendant and asked:

> Q: Do you think that's … [Defendant?]"
> A: Yeah, that's him.
> Q: So what about that picture …
> A: Just his nose, his eyebrows. I can just tell. Yeah. Yeah. And that same jacket, yeah.
> Q: You've seen him in that jacket before?
> A: Yeah.
> Q: How confident are you, if you had to rate it? I know you're saying yeah and stuff, just …
> A: 100%.

*Id*. at 21-22.

The transcript shows that it was after, not before, these exchanges that the Agents said they knew Jonsson and Defendant were friends, helping the Agents was hard for Jonsson, that Defendant was selfish, Defendant did not think about how his conduct would affect others including the squad

5

and the whole department, and that Jonsson should remember Defendant did these things, not Jonsson. *Id*. at 22-23. This timing makes clear these comments by the Agents could not have corrupted Jonsson leading to an unreliable misidentification as Jonsson's identification occurred before the comments were made. It is true Jonsson was shown a second photo after the Agents' comments in which he reaffirmed the jacket worn by the suspect is a jacket he remembered Defendant wearing "a few times"; however, nothing about this subsequent exchange is so impermissibly suggestive or coercive that there is "a very substantial likelihood of irreparable misidentification." *Sialofi*, 2014 WL 12689870, at *1 *citing Simmons*, 390 U.S. at 385. Moreover, the Agents' use of the word "demons," on which Defendant focuses, is not made until the very end of the interview—that is, after all identifications occurred. ECF No. 51-1 at 26.

Defendant's argument that the Agents' comments influenced Jonsson is belied by the timing of their comments and that the Agents told Jonsson they would rather he not identify Defendant if he was uncertain. *Id*. at 20. Further, Jonsson identified Defendant's clothing without being prompted, and Jonsson explained the basis for recognizing the jacket worn in surveillance photos. *Id*. at 20-22. There is no dispute that Jonsson and Defendant were close friends, classmate at the police academy, and partners while they were working for Metro.[2] Thus, the passage of time between the identification and the alleged crime are not of particular import here given there is no dispute that Jonsson was very familiar with Defendant having spent time with him in and outside of a work environment over seven years. ECF Nos. 51-1; 53 at 1. Jonsson's identification is not one that arose from a relatively fleeting interaction during the commission of a crime. And, Jonsson was 100% certain the photo shown was Defendant. Defendant offers no detail of suggestiveness other than the interview exchanges to support his coerciveness contention.

---

[2] Although absent extenuating circumstances showing a single photograph may be unnecessarily suggestive, *United States v. Montgomery,* 150 F.3d 983, 992-93 (9th Cir. 1998), several decisions from the Eighth Circuit and the district courts therein explain this conclusion dissipates when the witness is familiar with the defendant prior to the identification. *United States v. Dobbs,* 449 F.3d 904, 909–10 (8th Cir. 2006); *United States v. Latham,* Case No. 12–25, 2012 WL 1155216, at *2 (D. Minn. Apr. 5, 2012); *United States v. Stoltz*, Case No. 11–096, 2011 WL 2533872, at *13 (D. Minn. Jun. 3, 2011). Uncontested representations show Jonsson was quite familiar with Defendant creating exactly the type of extenuating circumstance the Court finds sufficient to demonstrate suppression would be a Draconian sanction frustrating rather than promoting justice.

Under the totality of the circumstance presented, the interview does not demonstrate undue suggestiveness. Defendant's counsel will be able, through cross examination, to expose the potential for error, if any, in the identifications made by Jonsson. *Howard v. Clark*, 608 F.3d 563, 574 (9th Cir. 2010) ("skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable.") *quoting United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987) (additional citations omitted). For these reasons, the Court finds Defendant fails to meet his burden to demonstrate Jonsson's identification and future testimony should be suppressed.

          2.     *Josiah's Second Interview*.

Only the second interview of Josiah is discussed by Defendant and, therefore, only the second interview is analyzed here. In the absence of a transcript, the Court reviewed the summary.

There is no dispute the Agents told Josiah that things did not look good for him at the commencement of the interview; however, Agents also stated they wanted to hear Josiah's side of the story. The Agents also reminded Josiah that he needed to be honest and repeated questions when the Agents believed Josiah was less than forthcoming in his answers. Even considering these concerns raised by Defendant, the totality of the interview offers no evidence of coercive or suggestive tactics requiring the Court to recommend suppression.

At the risk of redundancy, Josiah is Defendant's brother—an individual who would be well equipped to identify Defendant whether in one photograph or multiple photographs. Josiah had been living with Defendant for about one year at the time the Red Rock robbery occurred. Josiah, the owner of the pickup truck used in the Red Rock robbery, sold the truck approximately four and one-half hours after the robbery took place. Josiah would be familiar with his own vehicle and able to reliably identify his truck. Given Defendant and Josiah's familial relationship and Josiah's ownership of the truck, neither the passage of time between the alleged criminal events and the identification nor whether Josiah was an eyewitness to the criminal conduct would decrease the reliability of these identifications.

Moreover, during the interview, Josiah was shown four pictures of his truck, but did not identify the truck until he was shown a picture in which he was driving the truck. ECF No. 51-4 at

7

2. Josiah also, again, did not initially admit he sold the truck to a recycler, instead returning to his story that he sold the truck to "a guy." *Id*. Undermining the allegation of coerciveness, it was only after these exchanges that the Agents reminded Josiah to be honest. *Id*. at 3.

The assertion of coerciveness is further undermined by what happened when Josiah was asked what his brother told him about the robberies. The summary states Josiah "thought for a couple of minutes in silence and then said, 'I can't say any more than I have.'" *Id*. Josiah told the Agents he was in a difficult position because Defendant is his brother, and he could not "give the government more ammunition against" him "then they already have …." *Id*. Nothing in the summary or presented by Defendant supports the conclusion that Josiah was pressured to say more.

Josiah was asked if he could identify his brother in a surveillance photo and was shown a photo from the Red Rock robbery, leading Defendant to say "Yep, that's … [my brother's] nose." *Id*. at 4. Josiah was shown three pictures of a white Volkswagen Jetta, one of which was a picture of Defendant's vehicle recovered during the investigation and confirmed the car in the pictures looked like Defendant's car. *Id*. at 3-4.

There is no exchange in the interview summary identified by Defendant or independently demonstrating to the Court impermissibly suggestiveness or coerciveness by the Agents such that Josiah's identification must be suppressed rather than attacked on cross examination. The three paragraphs Defendant devotes to this subject in his Motion (ECF No. 49 at 8-9) do not point the Court to any section of the summary supporting the conclusion that the Agents engaged in outrageous conduct. The fact that Josiah's identification may be less than ideal only confirms cross-examination may demonstrate flaws in the process for the jury. The weight and trustworthiness of Josiah's testimony at trial is properly left to the jury. *See U.S. v. Jasper*, 8 Fed.Appx. 168, 170 (4th Cir. 2001).

The above also demonstrates there is no need for an evidentiary hearing. Defendant does not identify with sufficient definiteness, clarity, and specificity that contested issues of fact exist.

**III.     Recommendation**.

IT IS HEREBY RECOMMENDED that Defendant's Motion to Suppress Purported Eyewitness Identification (ECF No. 49) be DENIED.

Dated this 23rd day of May, 2023.

                                                                         ELAYNA J. YOUCHAH
                                                                         UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).